## NEW YORK SIXTH DISTRICT COURT.

### E. P. ROBINSON agt. WM. C. HALL.

*An important mercantile decision, although arising in a justice's court.* Where a loan of money in English currency, is made in England to be paid in New York, the *pound sterling* is to be estimated here at its *real market value*, and not at its par value.

THIS was an action to recover £6 lent in England, to be paid on the arrival of the parties in New York. The defendant paid in court $30 (the par value), and claimed that was all the plaintiff could recover.

GEORGE W. WINGATE, *for the plaintiff,*

argued the following points :

*First*—That there was no statute limiting the plaintiff's recovery to the par value of the pound sterling.

(*a*) The only act which professed to fix its value for commercial purposes was that of February 9, 1793, which established its value at $4.44. This is the act referred to when the legal par is alluded to. (*Story on Bills*; *Story on Conflict of Laws*, 491, § 308; *Brightly's Digest*, 154.)

(*b*) This act, besides having been held to have been passed for revenue purposes only (*Phillips* agt. *Ins. Co. of Pa.*; *Hall's Journal of Jurisprudence*, 250, 257), was repealed by the acts of June 28, 1834, and March 3, 1843, establishing the value of the foreign coins by weight, and repealing all inconsistent acts by the act of July 27, 1842, which established the value of the pound sterling for revenue purposes at $4.84, and finally, by the act of February 21, 1857, which provided that the value of foreign coins should be estimated according to the annual report of the director of the mint.

(*c*) The director by his last report estimated the pound sterling at $4.86.

*Second*—There being no statutory provision fixing the value, the plaintiff should recover the market value. The rule where the currency has depreciated being established that the creditor should recover sufficient to reimburse him in the country where he sues. (*Story on Bills*, § 418; *Chitty on Bills*, ch. 9, *p.* 433; *Dungannon* agt. *Hackett*, 1 *Eq. Case Abr.* 288; *Pardessus Droit Comm. Tome* 5, *Art.* 1495; *Smith* agt. *Shaw*, 3 *Wash. Cir. R.* 167; *Story on Conflict of Laws*, § 310, *p.* 494; *particularly Cockrell* agt. *Barber*, 16 *Vesey*, 461, 465; *Cash* agt. *Kennon*, 11 *Id.* 314; see *De Rham* agt. *Grove*, 18 *Abb.* 46.)

*Third*—The provisions of the legal tender act have no application. This act establishes the currency of the coun-

try, and the question here is, what is the value of £6 in that currency?

(a) It must be kept in mind that there is a great distinction between this case and those where the promise was to pay so many *dollars in gold*. There a paper dollar is made by law an equivalent for the debt, here the claim does not become a debt until *the value in dollars has been ascertained* by evidence, *and then* that amount may be paid in paper.

*Fourth*—This is a question involving the foreign credit of our mercantile interest, which will be destroyed if parties residing abroad can only recover their debts at *par, paid in currency*, that is one-half of their debt, or even less.

A. AIKEN, *for defendant.*

BARRETT, J. The plaintiff loaned the defendant £6 sterling, at Queenstown, and the amount was to be repaid in this city. There is no just distinction between a loan made in England and payable there, and a loan made there but payable here in English money. The intention here was that the plaintiff should receive back her £6 or its equivalent, in lawful money of the United States. What then is the value of the £6 in such lawful money? The testimony shows that six pounds sterling were actually worth in the market $78, on or about the day when this debt was payable, and $67 on or about the day of trial. The latter sum, is in my judgment, the true measure of damages, unless there is some statute or rule laying down a different rate. I have been unable to discover any act whereby the pound sterling is to be estimated at a fixed sum in our money for general purposes. The act of July 27, 1842 (*Dunlop, p.* 997), whereby all previous acts inconsistent therewith were repealed, fixed the value of the pound at $4.84, in respect to all payments by or to the treasury, but not for commercial purposes generally. This

act was passed when foreign coins were yet a legal tender. By the subsequent act of February 21, 1857 (11 *Stat.* 163), all former acts declaring foreign gold or silver to be a legal tender in payment of debts, were repealed, and it was provided that the director of the mint should thereafter make an annual report of the weight, fineness and value of all foreign coin.

Thus it will be seen that even as between the United States and the importer, the value of the foreign coin is now the subject of regulation, based upon the annual report of the director of the mint. There being then no act upon the subject, the question is whether the par of exchange or the real rate should be the measure of damages? The latter is the only rule whereby exact compensation can be afforded to the creditor. It is equally just to the debtor, for the par may be greater than the real rate. I do not look upon the establishment of a par of exchange in the light of a legal rate or statute fixing the value. It is rather an agreed and conventional stand-point, to serve as a mere basis in estimating the actual value. It supposes the currencies of both nations to be of the precise weight and purity fixed by their respective mints, and it should not therefore be adhered to as a fixed rule of value where the currency of either country has become depreciated. (*Story on Conflict of Laws*, § 308, 309, *et seq.*; *Smith* agt. *Shaw*, 2 *Wash. C. R.* 157; *Grant* agt. *Healy*, 2 *Chand. Law R.* 113; 3 *Sumner*, 523.)

In the case last cited, Judge STORY, in delivering the opinion of the supreme court of the United States, reviewed and disapproved of the New York cases of *Martin* agt. *Franklin* (4 *John.* 125), and *Schofield* agt. *Day* (20 *John.* 102), and the Massachusetts case of *Adams* agt. *Cordies* (8 *Pick.* 260). The reasoning of Judge STORY is specially applicable to a debt payable in a foreign country, yet as previously suggested, I do not see any distinction between such a case and the present, and Judge STORY in his *Conflict of*

*Laws*, § 310, expressly illustrates the rule contended for by a case entirely parallel with the present.

Judgment for plaintiff $67.